IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Billy Wayne Jenkins, Sr.**  **Plaintiff**
**on behalf of B.W.J, a minor child**

v.                           No. 4:14–CV–257–DPM-JTK

**Carolyn W. Colvin, Acting Commissioner,**  **Defendant**
**Social Security Administration**

**Recommended Disposition**

**Instructions**

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Billy Wayne Jenkins, Sr., seeks judicial review of the denial of his application for supplemental security income (SSI) for his school-aged son, B.W.J.[3] Jenkins claims B.W.J. has been disabled since October 17, 2009, when B.W.J. turned 10 years old. Jenkins based disability on left-eye blindness, attention deficit hyperactivity disorder (ADHD), and learning disability.[4]

**The Commissioner's decision.** After considering the application, the Commissioner's ALJ determined B.W.J. has severe impairments — borderline intellectual functioning, attention deficit disorder, and vision impairment[5] — but he lacks an "extreme" limitation in one of six specified functional domains, or a "marked" limitation in at least two domains.[6] Thus, the ALJ concluded that B.W.J. is not disabled and denied the application.[7]

---

[3]SSA record at p. 11 (stating that Jenkins applied for SSI on March 23, 2011 and alleged disability beginning Oct. 17, 2009) & p. 61 (acknowledging receipt of application).

[4]*Id*. at p. 141.  There is no evidence of left-eye blindness.  B.W.J. has poor vision in the left eye, but his left-eye corrected vision is 20/50.  *Id*. at p. 266 (Oct. 22, 2010) & p. 263 (Apr. 2012).

[5]*Id*. at p. 14.

[6]*Id*. at pp. 18-23 (determining B.W.J. has a marked limitation in one domain, a less than marked limitation in one domain, and no limitation in four domains).

[7]*Id*. at p. 23.

After the Commissioner's Appeals Council denied a request for review,[8] the ALJ's decision became a final decision for judicial review.[9]  Jenkins filed this case to challenge the decision.[10]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[11]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Jenkins's argument**.  Jenkins maintains the ALJ erred by failing to specifically address listing 112.05D.  That listing is one way to prove disability based on intellectual disability.[12]  Jenkins relies on May 2011 and August 2011 IQ scores to argue that B.W.J.

---

[8]*Id*. at p. 1.

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[10]Docket entry # 1.

[11]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (explaining that the court will uphold the decision if it lacks legal error and is supported by substantial evidence).

[12]This order uses the term "intellectual disability" instead of the term "mental retardation" used in the pleadings and the record.  The difference in terms flows from Rosa's law which directed federal agencies to replace the terms "mentally retarded" or "mental retardation" with "individual with an intellectual disability" and "intellectual disability."  The Commissioner made that change to the social security regulations in 2013.  Because the challenged decision was issued after the change, this order uses the

meets listing 112.05D. Jenkins contends that even if B.W.J. doesn't meet or medically equal the listing, B.W.J. functionally meets the listing because he has a marked limitation in the domain of attending and completing tasks. For these reasons, he maintains substantial evidence does not support the ALJ's decision.[13]

**B.W.J. does not meet or medically equal listing 112.05D**. At step three of the disability-determination process, the ALJ must determine whether the child's impairment meets or medically equals the severity requirements for a listed impairment.[14] To meet listing 112.05D, the child must have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function."[15] IQ scores are helpful in determining whether a child meets a listing, but the ALJ may reject IQ scores if they are inconsistent with the record as a whole.[16] Scores must be valid to prove intellectual disability.

The ALJ didn't explicitly address the scores or the listing at step three, but the ALJ implicitly determined the May 2011 and August 2011 IQ scores are invalid by

---

new terms.

[13]Docket entry # 8.

[14]20 C.F.R. § 416.924(d).

[15]20 C.F.R. § 404, subpt. P, app. 2, § 112.05D.

[16]*Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824-25 (8th Cir. 2008).

stating "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments…."[17] The ALJ also discussed why the scores addressed why the scores under-estimated B.W.J.'s intellectual functioning. Failing to explicitly address the validity of the scores or listing 112.05D at step three provides no basis for relief in the absence of harm.[18] Jenkins cannot show harm because the ALJ explicitly determined that B.W.J. does meet or medically equal a listing, thus implicitly rejecting the scores as invalid.

**The ALJ had a sufficient basis for rejecting the May 2011 an August 2011 IQ scores**. The examiners who conducted the May 2011 and August 2011 testing felt the test scores under-estimated B.W.J.'s intellectual functioning.[19] Both examiners observed that B.W.J. was distracted during testing.[20] According to the May 2011 examiner, B.W.J.'s adaptive behavior, academic placement, and teacher reports suggest a higher ability than the scores indicate;[21] the examiner attributed the low scores to distraction and lack of effort. According to the August 2011 examiner, B.W.J. functions at the

---

[17] SSA record at p. 14.

[18] *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (showing harmful error requires some indication the ALJ would have decided differently if the error had not occurred).

[19] SSA record at pp. 237 & 241-42.

[20] *Id*.

[21] *Id*. at p. 237.

borderline range to low average range.[22] The second examiner attributed the low scores to distraction and B.W.J.'s word processing index score.[23]

Importantly, the May 2001 and August 2011 testing was conducted during a time period when B.W.J. was not treated for ADHD. Two years earlier — when B.W.J. was treated — his scores were higher; his scores were in the high average to average range.[24] The earlier examiner identified learning disabilities in reading, reading comprehension, basic writing, and written expression, and recommended school accommodations and continued treatment.[25]

In March 2012, an educational examiner conducted a fourth battery of tests and concluded that B.W.J. functions in the average range of intellectual functioning.[26] According to the March 2012 examiner, B.W.J. had achieved below average in reading, math, and written expression.[27] As in May 2011 and August 2011, B.W.J. was not being treated for ADHD. The lack of treatment explains the difference in scores. A reasonable mind would accept the evidence as adequate to support the ALJ's

---

[22]*Id.* at pp. 241-42.

[23]*Id.* at p. 241.

[24]*Id.* at p. 304.

[25]*Id.* at pp. 307-08.

[26]*Id.* at p. 224.

[27]*Id.* at pp. 218-25.

determination that B.W.J. functions at the borderline range because: (1) the May 2011 and August 2011 examiners felt the test scores under-estimated B.J.W.'s intellectual functioning, (2) B.W.J. was not treated for ADHD at the time of the testing, and (3) testing during treatment indicated a higher level of functioning.

**B.W.J. has no marked limitation in attending and completing tasks**. Even if a child doesn't meet or medically equal a listing, he may qualify for SSI if he "functionally equals" a listing.[28] A child functionally equals a listing if he has an "extreme" limitation in one of six specific functional domains, or a "marked" limitation in at least two domains.[29] In considering a child's limitations, the ALJ considers the child's age-appropriate functioning in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving around and manipulating objects; (5) caring for oneself; and (6) health and physical well being.[30] The only domain in dispute is "attending and completing tasks." Jenkins claims B.W.J. has a marked limitation in this domain. The ALJ determined he

---

[28]*Brown ex rel. T.W. v. Barnhart*, 388 F.3d 1150, 1151-52 (8th Cir. 2004).

[29]20 C.F.R. § 416.926a.

[30]20 C.F.R. § 416.926a(a)(1)(i)-(vi). The ALJ determined B.W.J. has a marked limitation in acquiring and using information; a less than marked limitation in attending and completing tasks; and no limitation in interacting and relating with others, moving around and manipulating objects, caring for oneself, and health and physical well being. SSA record at pp. 18-23.

has a less than marked limitation.

The "attending and completing tasks" domain considers how well a child begins, carries through, and finishes activities, including the pace at which the child performs activities and the ease with which he changes activities.[31] For a school-aged child like B.W.J., the ALJ considers whether the child develops lasting friendships with children of his age; begins to understand how to work in groups to create projects and solve problems; understand other points of view and tolerate differences; talk to people of all ages, to share idea and tell stories; and speak in a manner familiar and unfamiliar listeners readily understand.[32] Examples of limited functioning in the domain include the following:

> (i) the child is easily startled, distracted, or over reacts to sounds, sights, movements, or touch;
>
> (ii) the child is slow to focus on, or fail to complete activities of interest to the child, e.g., games or art projects;
>
> (iii) the child repeatedly become sidetracked from his activities or frequently interrupts others;
>
> (iv) the child is easily frustrated and gives up on tasks, including ones he is capable of completing; and

---

[31] 20 C.F.R. § 416.926a(h).

[32] 20 C.F.R. § 416.926a(h)(2)(iv).

(v) the child needs extra supervision to keep him engaged in an activity.[33]

Proving a marked limitation requires evidence that the impairment seriously interferes with the child's ability to independently initiate, sustain, or complete activities.[34]

Jenkins complained about nothing rising to this level. Instead, he complained about problems with attention, learning, and fighting with siblings. Jenkins told the May 2011 examiner that B.W.J. loses "focus real easy."[35] He told the August 2011 examiner that B.W.J. is a "slow learner."[36] In February 2012, he described B.J.W. as being forgetful, having a hard time concentrating, and fighting with his siblings.[37] In April 2011, B.W.J.'s step-mother reported problems with reading, writing, making change, getting along with adults, doing chores, and finishing tasks.[38] B.W.J.'s teacher reported similar problems.[39] These symptoms contributed to a later diagnosis of ADHD.[40]

---

[33] 20 C.F.R. § 416.926a(h)(3).

[34] 20 C.F.R. § 416.926a(e)(2).

[35] SSA record at p. 235.

[36] *Id.* at p. 239.

[37] *Id.* at p. 276.

[38] *Id.* at pp. 120-29.

[39] *Id.* at pp. 130-37.

[40] *Id.* at p. 274.

ADHD "is characterized by attention problems, including distractibility, hyperactivity, impulsive behaviors, and the inability to remain focused on tasks or activities."[41] Untreated, ADHD can negatively affect a child's educational performance, impair his relationships with peers and siblings, and lead to the perception of being a slow learner or troublemaker in the classroom.[42] Most children, however, experience significant relief from symptoms with psycho-stimulant medication.[43]

Importantly here, the symptoms discussed above apply to a time period when B.W.J. received no treatment. With psycho-stimulant medication, B.W.J. had few problems — he paid attention in school; his teacher was very pleased with his progress.[44] His grades improved from Ds to As and Bs.[45] He got along better with his siblings.[46] His step-mother explained that, with the medication, B.W.J. is totally different kid; she said, you can't ask for a better kid.[47]

---

[41]Tish Davidson, Laura Jean Cataldo & William A. Atkins, 1 The Gale Encyclopedia of Mental Health 150 (3d ed.).

[42]*Id.* at p. 155.

[43]*Id.*

[44]SSA record at p. 270.

[45]*Id.* at p. 269.

[46]*Id.*

[47]*Id.* at p. 40.

B.W.J.'s improvement is probative of Jenkins's claim, because an impairment which can be controlled by treatment or medication is not disabling under social security law.[48] Once treated, B.W,J. liked his new school, because "they actually teach you and they actually make sure that you do your work."[49] He has friends at school. He plays football and baseball.[50] He hunts deer with a rifle.[51] He has no problems with his teachers, although he sometimes gets into trouble on the school bus for being loud and turning around in his seat.[52] The record shows treatment resolves B.W.J.'s symptoms, such that ADHD does not seriously interfere with B.W.J.'s ability to independently initiate, sustain, or complete activities. A reasonable mind would accept the evidence of the effect of treatment as adequate to support the ALJ's determination that B.W.J. has a less than marked limitation in attending and completing tasks.

## Conclusion and Recommendation

Substantial evidence supports the decision that B.W.J. is not disabled, because the evidence shows neither an extreme limitation in one domain nor a marked limitation in two domains. The ALJ made no legal error. For these reasons, the

---

[48]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[49]SSA record at p. 54.

[50]*Id*. at p. 55.

[51]*Id*. at p. 56.

[52]*Id*. at pp. 56-57.

undersigned magistrate judge recommends DENYING the request for relief and AFFIRMING the decision denying the application.

Dated this 2nd day of March, 2015.

_____
United States Magistrate Judge